HALEY, Judge.
INTRODUCTION
The Workers’ Compensation Act (the “Act”) authorizes awards for lost wages resulting from an “incapacity for work resulting from” injury. Code § 65.2-500 et seq. The issue here for resolution is whether a furlough from work of predefined and limited duration, applicable to all manufacturing employees, both those with and without restricted work capacity, justifies an award for lost wages to a worker with restricted capacity, in the absence of evidence demonstrating a causal relationship between that restriction and the wage loss. We conclude such an award under these circumstances is not authorized by the Act.
FACTS
The facts may be succinctly stated:
As a result of an industrial accident he had as an hourly employee in the manufacturing line at Utility Trailer Manufacturing Company (“Utility”) on January 9, 2006, Joshua Tester-man (“claimant”) was awarded medical benefits, temporary *476 total disability benefits, and permanent partial disability. Claimant thereafter resumed his work as an hourly employee at Utility that same year in a manufacturing line position commensurate with his restricted work capacity. He has worked in that capacity at all times here relevant.
The plant manufacturing line was shut down from January 5 to January 9, 2009. All employees on that line were furloughed for this period. On March 11, 2009, claimant filed an application seeking “Compensation for total wage loss ... [f]rom January 5, 2009 [t]o January 9, 2009.”
William Weaver, the human resources manager who had worked at Utility for twenty years, testified that the manufacturing line was shut down that week for an annual “physical inventory count.” He testified that the inventory count is usually held “the first full week in January,” because “you cannot run manufacturing while we’re doing physical inventory. You’ve got to stop everything and do accounts.” He further testified that every employee was informed verbally of that week-long shutdown, specifically the “start and end date,” and notice of the same was posted in the factory hallway. That posted notice is part of the record before us. He further testified, “[w]e told them [the manufacturing employees] we were shut down for one week only.”[1] In short, since the need for manufacturing production traditionally slowed in January, it was in that month that the annual inventory was held.
At the hearing before a deputy commissioner, claimant testified as follows:
Attorney: And after January 9th did you return back to your light duty job?
Claimant: Yes, sir.
Q.: And have you continued to work it since that time?
*477 A.: Yes, sir.
$$$$$$
Q.: ... you understood when you went out that it was for this period of time, a limited defined period of time, and that you’d be brought back right in at the end of that week?
A.: Yes, sir.
In addition to the foregoing, claimant testified he thought the week work stoppage developed because: “[W]e was [sic] slow on work.” Claimant acknowledged there had been an annual inventory during the first week of January every year of the five years he had worked for Utility. Nonetheless he claimed, in contradiction to the testimony of William Weaver, that he had worked production during those prior inventories.
Finally, narrowing our inquiry: (1) the parties have stipulated that claimant adequately marketed his residual work capacity during the week of January 5-9, 2009;[2] (2) upon inquiry by the deputy commissioner as to whether the shutdown resulted from “an economic downturn,” counsel for employer replied: “Yes, just the plant closed for inventory. It’s a combination of those two things. I think they both really come under the guise of the causation defenses.”; and (3) claimant returned to work following the shutdown at his same salary.
*478 By opinion dated July 29, 2009, a deputy commissioner rejected employer’s defense that the wage loss “was not causally related to” claimant’s restricted capacity. Rather, relying upon Metro Mach. Corp. v. Sowers, 33 Va.App. 197, 532 S.E.2d 341 (2000), she awarded lost wage benefits because claimant’s “ability to compete economically ... with co-workers ... attempting to find work during a lay-off, is permanently impaired.”
By opinion dated June 9, 2010, a majority of the commission affirmed, specifically adopting the deputy’s reasoning. Testerman v. Utility Trailer Mfg. Co., 226-77-65, 2010 VA Wrk. Comp. Lexis 290 (Jun. 9, 2010). Dissenting, Commissioner Williams noted that the claimant “did not lose wages because of his impaired capacity, but he lost wages, as did his coworkers, because of the employer’s shut-down.” Id. at *12. He continued: “A period of one week is simply of insufficient duration to reasonably conclude that the claimant’s ability to obtain other light duty work was the result of his disability as opposed to some other cause.” Id. at *12-13. He concluded that the effect of the commission’s decision placed claimant “in a better position than his co-workers because of his disability without any showing that his disability had made him any less likely to find employment than his co-workers during the same period.” Id. at *13 (emphasis added).
ANALYSIS
Our analysis begins with a review of our cases relevant to the inquiry.
In Metro Mach. Corp., 33 Va.App. at 202, 532 S.E.2d at 343-44, “the majority of the company’s work force was laid off solely for economic reasons,” on March 28, 1997. (Emphasis added.) This included Sowers, a restricted capacity employee. The layoff was of then undefined duration.[3] “Claimant sought and received unemployment benefits.” Id. at 202, 532 S.E.2d *479 at 344. He further sought temporary total and temporary partial disability benefits under the Act. We rejected, as had the commission, the employer’s defense that “because the layoff was plant wide and economic in nature, claimant was not entitled to disability benefits because his lack of work was unrelated to his injury.” Id. at 208, 532 S.E.2d at 347. We found a causal relationship because claimant’s opportunity to engage in work was limited by his restricted capacity and “[t]hus, he did not have the same ... ability as other [not restricted capacity] employees to find other employment.” Id. at 209, 532 S.E.2d at 347.
In Carr v. Va. Elec. & Power Co., 25 Va.App. 306, 309, 487 S.E.2d 878, 880 (1997), the commission had denied the claimant benefits, finding that he, a restricted capacity lineman, had lost overtime because of “purely economic factors unrelated to the accident.” We reversed, holding that business or economic conditions did not diminish employer liability for lost wages when other non-restricted capacity linemen “continue[d] to receive overtime” wages during “the [time] period in question.” Id. at 312, 487 S.E.2d at 881. Thus, we concluded there was a causal relationship between the overtime wage loss and the earlier injury.
In Consol. Stores Corp. v. Graham, 25 Va.App. 133, 486 S.E.2d 576 (1997), the injured hourly employee, formerly a stocker, returned to light-duty work as a sales person. Her hours were reduced as a sales person, according to Consolidated, because of a down turn in business. In affirming a wage differential award, we held that “the employer’s financial condition and the availability of alternative work do not affect the claimant’s right to compensation due to an impaired capacity to perform his pre-injury duties.” Id. at 137, 486 S.E.2d at 578.
Three factors are common to each of the foregoing cases: (1) the suspension or reduction of work for each claimant began or continued for an undefined duration; (2) by comparison with non-restricted employees, wages were lost; that is, Carr lost overtime compared with non-restricted linemen, *480 Graham had fewer hours as a sales person than as a stocker, and Sowers’ physical restrictions diminished his ability to find work compared to non-restricted co-workers; and (3) the causal relationship between the wage loss and the injury was established by the evidence.
The commission has also considered cases similar to the instant case, but in each of the following cases, one or more of the three above-noted factors are absent.
In Jones v. Genie Co., No. 166-97-76, 1998 VA Wrk. Comp. Lexis 4046 (Dec. 3, 1998), employer’s plant closed from December 23, 1997 to January 8, 1998 for annual maintenance and repairs. All employees, including the restricted work claimant, were furloughed for that period. In denying the claim for lost wages, the commission wrote:
In this case, the claimant, like all of the ... other employees, did not work for two weeks because of the annual closing for repairs and maintenance. She did not lose wages because of her impaired capacity, but she lost wages, as did her coworkers, because of the shutdown and would have lost the wages in her pre-injury job. If the claimant were to receive benefits for the brief shutdown period, she would be in a better position than her coworkers because of her disability.
Id. at *4.
The commission continued:
While two weeks is not considered to be a long enough period to require marketing, it is also not a sufficiently long period to make a finding that a partially disabled worker is disadvantaged when all other employees are also out of work. This differs from a case where the shutdown is long-term and the employee, after a reasonable marketing effort, shows that the disability restricted alternative employment opportunities.

Id.

The commission was faced with similar circumstances in Rodriguez v. Stouffer Concourse Hotel, No. 160-73-71, 2005 *481 VA Wrk. Comp. Lexis 3984 (Dec. 21, 1998). On December 14, 1997, Stouffer, a restricted worker, and all other employees, were told that the hotel would be closed for six weeks for renovation and that he, and all other employees, would be rehired when the renovation was complete. He was rehired on January 31, 1998. In denying the claim, the commission ■wrote:
Here, the claimant suffered a wage loss because the employer undertook a renovation project. The project ... was for a definite, relatively fixed period. The employees in [Con-sol. Stores Corp.] ... and Graham, however, suffered wage loss for an indefinite period. These cases, therefore, stand for the proposition that an employer may not escape liability for a partial wage loss by indefinitely eliminating a light-duty assignment for “economic reasons.” ... Here the claimant was out of work for approximately six weeks because of the renovation project. The claimant was not singled out by the employer, but was treated similarly to all employees whose work was affected by the renovation. Thus, we find that the claimant did not lose wages because of any impaired capacity, but because of the renovation.
Id. at *3, 6.
Commentators have noted the issue here for resolution. In 4 Arthur Larson & Lex K. Larson, Larson’s Workers’ Compensation Law, § 84.03 (2004), that commentator writes, “[i]t is not difficult to phrase a plausible rule: Loss of employment should not be deemed due to disability if a worker without the disability would lose employment or suffer a reduction in earnings under the same economic conditions—but whether this formula can be applied with any precision may be open to question.”
Any attempt at precision requires a delineation of factors for consideration in establishing those “same economic conditions.” We find they include: (1) the length of any furlough from work; (2) whether that furlough included all employees, restricted or not, of the same class; (3) the reason for the furlough; (4) whether the term of the furlough was pre *482 determined by the employer; and (5) whether employees were offered employment at the termination of the furlough. These factors address the fundamental issue in these cases: is any wage loss causally related to the injury?
In this case, the furlough was for one week, based upon a combination of an annual slow down in manufacturing needs and an annual physical plant inventory. All workers in the manufacturing line, with or without restricted work capacities, were furloughed. The furlough was pre-determined as to length. All employees, with or without restricted work capacities, were advised they could return to work at the end of the furlough, as did claimant. There was no confluence of all of these factors in Metro, Graham, or Carr. Here, claimant was off for one week. As the dissenting commissioner wrote, “[a] period of one week is simply of insufficient duration to reasonably conclude that the claimant’s ability to obtain other light duty work was the result of his disability____” This was the same conclusion reached by the commission in Jones, where the furlough was for two weeks.
As noted above, claimant’s efforts to obtain work on January 5, 2009, were unsuccessful, as would have been the efforts of his fellow furloughed employees without work-restricted capacity, because the potential employers contacted simply were not hiring. Accordingly, it was not claimant’s limited work capacity, when compared -with non-restricted fellow employees, that caused his lack of employment. And it was claimant’s burden to demonstrate the causal relationship between his loss of wages and his injury. Moreover, as noted by the dissenting commissioner, if claimant were awarded benefits for lost wages, he would be “in a better position than his [non-restricted] co-workers.... ”
We do not believe the dissent properly addresses our decision.
We hold only that during a furlough a condition precedent for an award to a partially incapacitated employee for lost wages (or diminution in earning power) is a causal relationship between that incapacity and that loss. We do not *483 assert that a partially incapacitated employee must prove an actual loss of wages during a period of furlough. We do assert that the loss of actual or potential wages must be the result of the partial incapacity. Indeed, the language of Code § 65.2-502 (“when the incapacity for work resulting from the injury is partial ....”) admits of no interpretation but that a causal relationship is required. See Great Atlantic & Pac. Tea Co. v. Bateman, 4 Va.App. 459, 461, 859 S.E.2d 98, 99 (1987) (“Compensation for loss of earnings due to an injury is governed by Code §§ 65.1-54 and 65.1-55. Benefits under these sections for total and partial incapacity compensate the employee for loss of earnings resulting from the injury”), quoted with approval in Twenty-First Century Concrete v. Giacchina, 20 Va.App. 826, 831, 457 S.E.2d 379, 381 (1995); Crystal Oil Co. v. Dotson, 12 Va.App. 1014, 1020-1021, 408 S.E.2d 252, 255 (1991).
Our decision is limited in scope; it addresses only those cases where a partially incapacitated employee is furloughed. The five factors we developed are not rules. They are suggestions for analyzing, as we wrote above, “the fundamental issue in these cases: is any wage loss causally related to the injury?”
In Vega v. Jwayyed, 218 Va. 1026, 1032, 243 S.E.2d 228, 231 (1978), the Virginia Supreme Court wrote, “although we have repeatedly held that the provisions of the Workmen’s Compensation Act are to be liberally construed, the Commission’s ruling would engraft upon the Act a provision for unemployment insurance which could not be sustained.”
That reasoning applies in this case. Claimant has not demonstrated that his lost wages were causally related to his injury. Accordingly, he may not look to the provisions of the Act for recompense. For these reasons, the decision of the commission is reversed and the claim for lost wages is dismissed.

Reversed and dismissed.

. The record reflects that some salaried non-production line employees were not furloughed, as they were needed to conduct the inventory. In past years, but not in the furlough period here under consideration, some hourly wage manufacturing employees, like claimant, were used in the physical inventory process. However, when so used, they were chosen to participate on the basis of seniority.

. We note that a claimant is required to prove not just that he made reasonable efforts to market his residual capacity, but further, that his disability rendered him "unable to market his remaining capacity for work." Pocahontas Fuel Co., Inc. v. Agee, 201 Va. 678, 681, 112 S.E.2d 835, 837 (1960) (cited with approval in Washington Metro. Transit Auth. v. Harrison, 228 Va. 598, 600, 324 S.E.2d 654, 655 (1985)); see also County of James City Fire Dep’t. v. Smith, 54 Va.App. 448, 454, 680 S.E.2d 307, 310 (2009). The record in this case shows that claimant went to five places on January 5, 2009 (the first day off during the shutdown). Three were not hiring anyone, one was hiring only management, and the other did not have any job applications available. See App. at 36. No other efforts were made. That said, those efforts do not show that claimant was unable to obtain employment because of his restricted work capacity; rather, they show that even those also laid off during the shutdown, without any restricted work capacity, would likewise have been unable to obtain employment from the same potential employers claimant contacted.

. In November 1997, eight months later, all laid-off employees, including Sowers, were recalled to work, apparently because of improved economic conditions.