COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Petty and McCullough
Argued at Alexandria, Virginia


CARNIE CARR, JR.

                                                              OPINION BY
v.        Record No. 1589-13-4                      JUDGE STEPHEN R. McCULLOUGH
                                                              APRIL 8, 2014

ATKINSON/CLARK/SHEA,
 A JOINT VENTURE, AND ST. PAUL FIRE
 AND MARINE INSURANCE COMPANY


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          M. Thomas McWeeny (Julie H. Heiden; Koonz, McKenney,
          Johnson, DePaolis & Lightfoot, L.L.P., on brief), for appellant.

          Alan D. Sundburg (Friedlander Misler, PLLC, on brief), for
          appellees.


        Carnie Carr, Jr., assigns error to the ruling of the commission denying him benefits

during repeated furloughs of undefined duration.  We agree and reverse.

                                        BACKGROUND

        Appellant has been restricted to light duty following a work-related accident.  Due to the

vagaries of the construction industry, his employer periodically furloughs nearly all of its

employees for undefined periods of time, with the expectation that the employees will be hired

anew once additional contracts are signed and permits are obtained.  During these recurring

furloughs, only the superintendent, the assistant superintendent, and the union steward remain on

the payroll.  Some of the furloughs are short, lasting one or two days.  Others can last more than

three weeks.  Ordinarily, the employer will indicate to the employees the anticipated duration of

the furlough.  The employer would indicate, for example, that the furlough would "probably be a

week or two" or "it might be a week, might be a couple days, might be a couple weeks."

Appellant sought compensation benefits for these undefined furlough periods.

The deputy commissioner concluded that appellant was not entitled to benefits. The commission, interpreting our decision in Utility Trailer Mfg. Co. v. Testerman, 58 Va. App. 474, 711 S.E.2d 232 (2011), affirmed.

ANALYSIS

The issue before us is a question of law, which we review *de novo*. Ratliff v. Carter Mach. Co., 39 Va. App. 586, 589, 575 S.E.2d 571, 573 (2003).

Code § 65.2-502(A) provides in relevant part that

> [W]hen the incapacity for work resulting from the injury is partial, the employer shall pay, or cause to be paid, as hereinafter provided, to the injured employee during such incapacity a weekly compensation equal to 66 2/3 percent of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter, but not more than 100 percent of the average weekly wage of the Commonwealth as defined in § 65.2-500.

An employer may choose to offer a partially incapacitated employee selective employment, in which case the employer does not have to pay benefits. Big D Quality Homebuilders v. Hamilton, 228 Va. 378, 381-82, 322 S.E.2d 839, 841 (1984). A partially disabled employee who refuses "employment procured for him suitable to his capacity" loses entitlement to certain benefits "during the continuance of such refusal, unless in the opinion of the Commission such refusal was justified." Code § 65.2-510(A).

Several decisions from this Court have parsed whether a partially incapacitated employee who has been provided selective employment is entitled to benefits when an employer experiences a furlough or temporary layoff. In Consolidated Stores Corp. v. Graham, 25 Va. App. 133, 486 S.E.2d 576 (1997), an employee was injured while working as a stocker and

later accepted selective employment as a sales clerk. Due to economic conditions, her employer provided her with reduced hours at her pre-injury wage. Id. at 135, 486 S.E.2d at 577. We held that the employee in question was entitled to continued benefits:

> [B]y providing suitable alternative employment to a claimant, an employer may avoid paying compensation benefits. However, the employer's financial condition and the availability of alternative work do not affect the claimant's right to compensation due to an impaired capacity to perform his pre-injury duties.
>
> Ms. Graham was not released to return to her duties as a stocker. She was not restored to her pre-injury capacity. Therefore, Consolidated remains liable to Ms. Graham, because its duty to compensate her has not been eliminated by the provision of alternative light duty work.

Id. at 136-37, 486 S.E.2d at 578.

Next, in Metro Mach. Corp. v. Lamb, 33 Va. App. 187, 196-97, 532 S.E.2d 337, 341 (2000), an employee was injured while working as a rigger. He accepted selective employment as a forklift operator. Id. at 195, 532 S.E.2d at 340. The employer contended that the employee was not entitled to benefits because his loss of wages was attributable not to his injury, but to a layoff due to the loss of repair work for the United States Navy. Id. at 196, 532 S.E.2d at 341. We rejected this argument, reasoning that

> After an economic layoff from selective employment, an employee remains entitled to benefits until he either fully recovers and is released to pre-injury work, or until the employer offers him other selective employment.
>
> The employer's reasons for the layoff should not diminish the employee's entitlement to benefits. The employee was injured on the job and his capacity to work reduced. . . . Until the employee can perform at his pre-injury capacity, he is protected from the economic vicissitudes of the market place. We conclude the employee's layoff due to the employer's economic downturn does not preclude his entitlement to disability benefits.

Id. at 196-97, 532 S.E.2d at 341 (citations omitted).

Finally, in Utility Trailer, we considered whether an employee who was working in a selective employment position was entitled to benefits during a plant-wide shutdown for an annual, week-long "physical inventory count." 58 Va. App. at 476, 711 S.E.2d at 233. Looking back on prior cases, we found that the presence of three factors accounted for the outcome in each case where benefits were awarded:

> (1) the suspension or reduction of work for each claimant began or continued for an *undefined duration*; (2) by comparison with non-restricted employees, wages were lost; . . . and (3) the causal relationship between the wage loss and the injury was established by the evidence.

58 Va. App. at 479-80, 711 S.E.2d at 234 (emphasis in original). The fundamental issue in these cases, this Court explained, was whether the wage loss is causally related to the partial incapacity. That is because "[l]oss of employment should not be deemed due to disability if a worker without the disability would lose employment or suffer a reduction in earnings under the same economic conditions." Id. at 481, 711 S.E.2d at 235 (quoting 4 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 84.03 (2004)). The Court developed five factors to help determine whether the wage loss was causally related to the injury:

> (1) the length of any furlough from work; (2) whether that furlough included *all* employees, restricted or not, of the same class; (3) the reason for the furlough; (4) whether the term of the furlough was pre-determined by the employer; and (5) whether employees were offered employment at the termination of the furlough.

Id. at 481-82, 711 S.E.2d at 235. On the facts before it, this Court reversed the award of benefits. Utility Trailer by its plain terms represents a decision that is "limited in scope" and "addresses only those cases where a partially incapacitated employee is *furloughed*." Id. at 483, 711 S.E.2d at 236 (emphasis in original).

A combination of factors distinguishes this case from Utility Trailer. Here, the claimant experienced *repeated* furloughs, each for an *undefined* duration. The furloughs took place due to

the vagaries of the marketplace rather than a regularly scheduled maintenance event, and the furloughs were not pre-planned by the employer. Instead, the furloughs were attributable to the "vicissitudes of the market place." Metro Machine, 33 Va. App. at 197, 532 S.E.2d at 341. Cf. Graham, 25 Va. App. at 137, 486 S.E.2d at 578 ("the employer's financial condition and the availability of alternative work do not affect the claimant's right to compensation due to an impaired capacity to perform his pre-injury duties").

With a short furlough of a defined duration, particularly an annually recurring one as in Utility Trailer, the employees, whether on selective employment or not, have little reason to seek employment elsewhere. With recurring furloughs of an undefined duration, however, the injured employee is placed at a disadvantage in seeking alternative employment, not only because his capacity to work has been reduced due to a work-related injury, but also because Code § 65.2-510 constrains him as a practical matter to return to selective employment when it resumes. Finally, weighing in the balance is the fact that the provisions of the Workers' Compensation Act "should be liberally construed to carry out ['the Act's'] humane and beneficial purposes." Baggett Transp. Co. v. Dillon, 219 Va. 633, 637, 248 S.E.2d 819, 822 (1978). We hold that on these facts the injured employee was entitled to benefits.[1]

CONCLUSION

The decision of the commission is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

[1] The injured employee, however, must show a reasonable effort to market his remaining work capacity, which will be determined by taking into account all of the facts and surrounding circumstances. Ford Motor Co. v. Favinger, 275 Va. 83, 89-90, 654 S.E.2d 575, 578-79 (2008) (quotations omitted).

Petty, J., concurring.

I concur in the opinion of the majority in all respects. I write separately simply to re-state my belief that Utility Trailer Manufacturing Co. v. Testerman, 58 Va. App. 474, 711 S.E.2d 232 (2011), cannot be reconciled with our previous holding in Metro Machine Corp. v. Lamb, 33 Va. App. 187, 532 S.E.2d 337 (2000), and thus, under our doctrine of interpanel accord,[2] was wrongly decided. Testerman, 58 Va. App. at 484, 711 S.E.2d at 236 (Petty, J., dissenting).

---

[2] "Under the interpanel accord doctrine, 'the decision of one panel becomes a predicate for application of the doctrine of *stare decisis* and cannot be overruled except by the Court of Appeals sitting *en banc* or by the Virginia Supreme Court.'" Atkins v. Commonwealth, 54 Va. App. 340, 343 n.2, 678 S.E.2d 834, 835 n.2 (2009) (quoting Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 73, 577 S.E.2d 538, 540 (2003)).