COURT OF APPEALS OF VIRGINIA

Present:   Judges McCullough, Huff and Senior Judge Haley
Argued at Chesapeake, Virginia

PRESTON McKELLAR

v.        Record No. 2231-13-1

NORTHROP GRUMAN SHIPBUILDING INC.,
  HUNTINGTON INGALLS INDUSTRIES, INCORPORATED
  AND HUNTINGTON INGALLS, INCORPORATED

OPINION BY
JUDGE GLEN A. HUFF
MAY 27, 2014

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Matthew H. Kraft (Matthew H. Kraft, P.L.C., on brief), for
> appellant.
>
> Benjamin M. Mason (Mason, Mason, Walker, & Hedrick, P.C., on
> brief), for appellees.

Preston McKellar ("claimant") appeals a decision of the Virginia Workers'

Compensation Commission ("commission") finding that claimant was not entitled to temporary

total disability benefits.  On appeal, claimant asserts that the commission erred in finding that

claimant's retirement from his employment with Northrop Grumman Shipbuilding, Inc.,

Huntington Ingalls Indus., Inc., and Huntington Ingalls, Inc. (collectively "employer" or

"appellees") precludes an award of temporary total disability benefits – even where he was in a

no work status and medically unable to work during the period of benefits claimed.  For the

following reasons, this Court affirms the commission's ruling.

I.  BACKGROUND

On appeals from the commission, "we review the evidence in the light most favorable to

the prevailing party." R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d

788, 788 (1990).  If supported by credible evidence, the commission's factual findings are

"binding on appeal," Tomes v. James City Fire, 39 Va. App. 424, 430, 573 S.E.2d 312, 315 (2002), "even though there is evidence in the record to support a contrary finding," Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986) (citing Caskey v. Dan River Mills, Inc., 225 Va. 405, 411, 302 S.E.2d 507, 510-11 (1983)).  When "determining whether credible evidence exists," we cannot "retry the facts, reweigh the preponderance of the evidence, or make [our] own determination of the credibility of the witnesses." Wagner Enters. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991) (citing Jules Hairstylists, Inc. v. Galanes, 1 Va. App. 64, 69, 334 S.E.2d 592, 595 (1985)).  In addition, the commission's "conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983).  So viewed, the evidence is as follows.

Claimant worked for employer as a structural welder from May 1968 until his retirement on May 1, 2010.  Claimant described his job as "very physically demanding."  His work involved welding component parts together that had been put in place by ship-fitters.  Moreover, claimant testified that at times he had to lift objects that weighed up to 75 pounds, weld in hot and cold environments, and climb ladders as part of his job.

In early April 2010, claimant filed for retirement with employer effective on May 1, 2010.  On April 15, 2010, claimant sustained a work injury by accident when he tripped and fell over a temporary attachment[1] on his way to his toolbox, hit a chair, and then landed on the floor.  As a result of the fall, claimant injured his right and left knees, right hip, back, right shoulder, right and left hands, right and left wrists, neck, right and left sciatic nerves, and right sacroiliac joint.  Following the accident, claimant was treated by Dr. Worth in the Shipyard Clinic and was

_____

[1] Claimant testified "the temporary attachment is usually moved . . . or cut off by the fitters or the welders, and it hadn't been removed at that time . . . ."

placed on restrictions. Claimant temporarily returned to work on a restricted duty status until his retirement on May 1, 2010. After his retirement, claimant was treated by Dr. Stiles and Dr. Wardell, who both placed claimant on no work status.

At the hearing before the deputy commissioner on January 11, 2013, claimant faced questioning regarding his employment plans since retirement:

> Mr. Mason: You haven't looked for any work since [retirement]?
>
> Mr. McKellar: I haven't been able to. I don't think I could do any work. I'm under a no-work status. My doctors put me on a no-work status, and I don't feel that I can work anywhere.

The deputy commissioner found that claimant was entitled to medical benefits pursuant to Code § 65.2-603 and temporary total disability benefits commencing May 14, 2010 and continuing despite claimant's May 1, 2010 retirement. Employer appealed the deputy commissioner's opinion to the commission.

On August 2, 2010, claimant was again asked about his employment plans after his retirement:

> Mr. Mason: And I'm assuming because you retired that you haven't looked for work anywhere. You haven't tried to work anywhere, right?
>
> Mr. McKellar: No. I haven't tried to work anywhere. My doctor had put me out on disability. He actually had no work in his notes that he had gave me. The last ones that I got from him in that regard to work.

On appeal, the commission affirmed the deputy commissioner's medical award but reversed the award for temporary total disability benefits. In its opinion, the commission held that since "claimant's wage loss would have occurred regardless of his compensable injury we find that the award of temporary total disability benefits was improper." Likewise, the commission further determined that "[a]warding temporary total disability benefits would, in effect, provide the claimant with an additional stream of retirement income denied to similarly

- 3 -

situated coworkers who were not injured." Moreover, the commission noted they "may have reached a different result had the claimant shown that he intended to work after retirement and that his injury reduced his expected wages." This appeal followed.

## II. STANDARD OF REVIEW

"Factual findings of the commission will not be disturbed on appeal unless plainly wrong or without credible evidence to support them." Ga. Pac. Corp. v. Dancy, 17 Va. App. 128, 135, 435 S.E.2d 898, 902 (1993). "'If there is evidence, or reasonable inferences can be drawn from the evidence, to support the commission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding.'" Amelia Sand Co. v. Ellyson, 43 Va. App. 406, 408, 598 S.E.2d 750, 751 (2004) (quoting Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986)). "While we generally give great weight and deference, on appeal, to the commission's construction of the Workers' Compensation Act, 'we are not bound by the commission's legal analysis,'" Fairfax Cnty. Sch. Bd. v. Humphrey, 41 Va. App. 147, 155, 582 S.E.2d 65, 68 (2003) (quoting Peacock v. Browning Ferris, Inc., 38 Va. App. 241, 248, 563 S.E.2d 368, 373 (2002)), and we "review questions of law *de novo*," Uninsured Employer's Fund v. Gabriel, 272 Va. 659, 662, 636 S.E.2d 408, 411 (2006) (citations omitted).

## III. ANALYSIS

Claimant asserts that the commission erred by finding that his retirement with employer precludes an award of temporary total disability benefits. Specifically, claimant argues that his retirement did not preclude an award of temporary total disability benefits since claimant's incapacity for work was total. Employer contends that temporary total disability benefits are improper because claimant's retirement, not his injury, caused his economic loss.

- 4 -

"The purpose of the Workers' Compensation Act is to compensate employees when they lose an opportunity to engage in work after suffering work-related injuries." Arlington Cnty. Fire Dept. v. Stebbins, 21 Va. App. 570, 572, 466 S.E.2d 124, 125 (1996) (citing Potomac Edison Co. v. Cash, 18 Va. App. 629, 631, 446 S.E.2d 155, 156 (1994)). "Based on this purpose, the Act compensates injured employees for loss of earning capacity." Id. (citing Bosworth v. 7-Up Distrib. Co., 4 Va. App. 161, 163, 355 S.E.2d 339, 340 (1987)). Code § 65.2-500 provides "when the incapacity for work resulting from the injury is total, the employer shall pay . . . to the injured employee during such total incapacity, a weekly compensation equal to 66 2/3 percent of his average weekly wages . . . ." "The reason for calculating average weekly wage is to approximate the *economic loss* suffered by an employee or his beneficiaries when there is a loss of earning capacity because of work-related injury or death." Bosworth, 4 Va. App. at 163, 355 S.E.2d at 340.[2] In making its decision, "[a]ll legal facts and circumstances surrounding the claim should properly be considered and due weight given them by the [c]ommission." Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 441, 339 S.E.2d 570, 573 (1986) (citing J.A. Foust Coal Co. v. Messer, 195 Va. 762, 766, 80 S.E.2d 533, 535 (1954)).

This Court's rulings in Stebbins and in Util. Trailer Mfg. Co. v. Testerman, 58 Va. App. 474, 711 S.E.2d 232 (2011), are instructive for the case at bar.[3] In Stebbins, a firefighter

---

[2] Typically, "average weekly wage" is calculated by averaging the previous 52 weeks of earnings. Code § 65.2-101(1)(a). An alternate method of computing average weekly wage is used when the average of the previous 52 weeks would "be unfair either to the employer or employee" in which case the Act provides for use of "such other method of computing average weekly wages . . . as will most nearly approximate the amount which the injured employee *would be earning were it not for the injury*." Code § 65.2-101(1)(b) (emphasis added). The alternate method reflects an underlying founding principle of the Workers' Compensation Act that the calculation of economic loss should "approximate the amount which the injured employee would be earning were it not for the injury." Report of the Virginia Commission on Workmen's Compensation, Senate Doc. No. 3, at 17 (1918).

[3] In the recent case of Carr v. Atkinson, 63 Va. App. 281, 756 S.E.2d 191 (2014), this Court addressed workers' compensation wage claims for partial incapacity, under Code

voluntarily retired. Thereafter, he worked as a part-time door man and a volunteer, but the record contained no evidence of any income from these activities. During his retirement, Stebbins became incapacitated due to heart disease presumptively related to his prior employment as a firefighter. In reversing the commission's award of lost wage benefits, this Court held "Stebbins is entitled to no compensation because he reported no earnings . . . ." Stebbins, 21 Va. App. at 573, 466 S.E.2d at 126. Additionally, this Court explained that an award under the circumstances "would result in a windfall to Stebbins and place him in a better economic position than he would have enjoyed absent an injury." Id. at 575, 466 S.E.2d at 126.

Similarly, in Utility Trailer, an employee was injured in an industrial accident but was able to return to work in a light-duty capacity. The employer then furloughed most of its employees for an annual inventory count. The claimant filed for temporary total disability benefits during the furloughed dates. In reversing the commission's ruling, this Court observed "it was not claimant's limited work capacity . . . that caused his lack of employment. And it was claimant's burden to demonstrate the casual relationship between his loss of wages and his injury." 58 Va. App. at 482, 711 S.E.2d at 236.

In the instant matter, claimant filed retirement papers with employer in early April 2010, enabling claimant to retire on May 1, 2010. On April 15, 2010, claimant sustained a

---

§ 65.2-502, a statute that provides for payments in much the same fashion as the statutory provision for total incapacity, Code 65.2-500.

In Carr, this Court identified three factors for harmonizing the holdings in Consolidated Stores Corp. v. Graham, 25 Va. App. 133, 486 S.E.2d 576 (1997), Metro Mach. Corp. v. Lamb, 33 Va. App. 187, 532 S.E.2d 337 (2000), and Utility Trailer, 58 Va. App. 474, 711 S.E.2d 232. Carr, 63 Va. App. at 285-86, 756 S.E.2d at ___. Determining an employer's obligation to pay wage benefits depends on (1) the duration of the furlough period, (2) a comparison with other non-injured employees, and (3) the causal relationship between the wage loss and the injury. Id. at 285-86, 756 S.E.2d at ___. But "[t]he fundamental issue in these cases . . . was whether the wage loss is causally related to the . . . incapacity." Id. at 286, 756 S.E.2d at ___. This Court added, "[l]oss of employment should not be deemed due to disability if a worker without the disability would lose employment or suffer a reduction in earnings under the same economic conditions." Id. at 286, 756 S.E.2d at ___ (internal citations omitted).

work-related injury and was subsequently placed on work restrictions due to the injuries. Claimant temporarily resumed his work on a restricted duty status until his retirement on May 1, 2010. Similar to Stebbins, the record is devoid of evidence that claimant sought or held any income producing employment after his retirement. In contrast, the record supports the commission's finding that appellant intended to retire and not seek other employment or income after his retirement on May 1, 2010. Furthermore, "it was claimant's burden to demonstrate the casual relationship between his loss of wages and his injury." Util. Trailer, 58 Va. App. at 482, 711 S.E.2d at 236. As the evidence suggests that appellant's retirement, not his injury, caused his loss of compensation, there is no evidence that appellant suffered a compensable economic loss.

Additionally, a worker who also retired on May 1, 2010, but did not suffer any injury, would have suffered the same alleged economic loss as claimant. Awarding claimant temporary total disability benefits would provide claimant with additional retirement income that a similarly situated retired worker would not receive. "When a worker does not suffer a loss of wages, receipt of compensation benefits would unjustly enrich the worker and result in manifest injustice." Lam v. Kawneer Co., Inc., 38 Va. App. 515, 518, 566 S.E.2d 874, 875 (2002). Accordingly, claimant did not demonstrate that he suffered a loss of wages because of the injury and resulting no work status. Therefore, "[a]n award of compensation in these circumstances would result in a windfall to [claimant] and place him in a better economic position than he would have enjoyed absent an injury." Stebbins, 21 Va. App. at 574, 466 S.E.2d at 126. Thus, the commission did not err in finding that claimant's retirement from employer precluded an award of temporary total disability benefits in this case.

## IV.  CONCLUSION

The commission did not err by finding that claimant was not entitled to an award of wage benefits for a period after his retirement when no showing of an economic loss was made. Therefore, this Court affirms the judgment of the commission.

<u>Affirmed.</u>