COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Causey and Senior Judge Clements
Argued at Richmond, Virginia

UNPUBLISHED

VIRGINIA ALCOHOLIC BEVERAGE CONTROL AUTHORITY/
  COMMONWEALTH OF VIRGINIA
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1395-21-2                  JUDGE JEAN HARRISON CLEMENTS
                                                        SEPTEMBER 6, 2022
THOMAS BLOT


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Scott John Fitzgerald, Senior Assistant Attorney General (Jason S.
            Miyares, Attorney General; Steven G. Popps, Deputy Attorney
            General; Marshall H. Ross, Section Chief; Jacqueline C. Hedblom,
            Acting Section Chief, on briefs), for appellant.

            William G. Sweeney, Jr. (Geoff McDonald and Associates, on brief),
            for appellee.


        The Virginia Alcoholic Beverage Control Authority and the Commonwealth of Virginia

(collectively, "the Commonwealth") appeal a decision of the Workers' Compensation

Commission ("the Commission") awarding Thomas Blot temporary partial disability benefits.

The Commonwealth argues that the Commission erred in awarding Blot temporary partial

disability benefits "because no evidence causally related . . . Blot's wage loss to the work

accident." The Commonwealth also argues that the Commission erred in awarding Blot

temporary partial disability benefits because he presented insufficient evidence that he had

marketed his residual work capacity. For the following reasons, we reverse the Commission's

judgment.

---

            [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

"On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below." *Anderson v. Anderson*, 65 Va. App. 354, 361 (2015) (quoting *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 83 (2005) (*en banc*)).

On December 15, 2019, Blot was working as a part-time sales associate at a Virginia ABC store. Blot approached a register to serve a customer but tripped over a rug that was "bunched up" on the floor behind the register and "wrenched" his knee. Blot immediately felt pain in his right knee but continued serving the customer. After the customer left the store, Blot reported the incident to the manager on duty, Michael Lowe. Lowe explained that the store manager, Mary Waldman-Seay, had placed small rugs on top of a rubber mat behind the register, but they were uneven, rough, and curled at the edges. Lowe also had tripped over the rugs several times and informed Waldman-Seay that they were a tripping hazard, but she ignored his report. Lowe also testified that Waldman-Seay ignored Blot's injury and did not offer any medical treatment when Blot reported it to her on December 16, 2019.

Waldman-Seay testified that Blot began complaining about tripping over the rugs after January 2020, so she stored them in a back room. She claimed that Blot did not complain to Lowe when he "supposedly" injured his knee. Waldman-Seay could not recall when she was informed of the injury, the manner in which the injury was reported, or her reaction. Nor could she recall whether she changed the rugs when she began working at the ABC store or whether anyone other than Blot had complained about tripping over the rugs.

In January 2020, Blot sought treatment for his knee from Dr. Steven J. Hospodar, an orthopedic surgeon. At an appointment on January 23, 2020, Blot reported knee pain while walking, standing, ascending and descending stairs, squatting, kneeling, during exercise, and

bending. Dr. Hospodar found that Blot's right knee showed tenderness but satisfactory range of motion and stability. He treated Blot's knee with a series of cortisone injections and told him to avoid activities that caused pain. Although Blot's pain was controlled by intermittent injections, his symptoms worsened, and Dr. Hospodar ordered an MRI in April 2020, which revealed that Blot had a horizontal medial meniscus tear. Dr. Hospodar continued to treat Blot's knee with corticosteroid injections because of restrictions on elective surgeries due to the COVID-19 pandemic and told Blot that if the injections provided relief, knee surgery could be avoided.

On March 30, 2020, Blot's cardiologist "took [him] out of work" over concerns surrounding the COVID-19 pandemic. Blot admitted that his decision to stop working was not related to his knee injury. On February 11, 2021, after receiving his COVID vaccine injections, Blot asked Dr. Hospodar for a "note" permitting him to return to work on "light duty." Dr. Hospodar indicated that Blot's substantial discomfort worsened with heavy activity and gave him a note that simply stated, "[l]ight duty." Although Dr. Hospodar did not detail what restrictions "[l]ight duty" encompassed, Blot testified that he was not supposed to squat; Dr. Hospodar placed no restrictions on the number of hours Blot could work.

On February 11, 2021, Blot returned to his pre-injury sales associate position at the ABC store but only worked six to eight hours per week because Waldman-Seay had replaced him. In addition, the store had implemented changes to its system, and Blot "had to relearn all the equipment and procedures again." Blot explained that he worked fewer hours because of scheduling issues and the need to be retrained, not his knee injury. Between February 15, 2021, and April 30, 2021, Blot applied for fifty-four jobs attempting to market his residual work capacity. None of his applications was successful. He recorded each job he applied for and the outcome of each application in a marketing log.

Blot filed a claim for benefits seeking a lifetime medical award, temporary total disability benefits from March 30, 2020, through February 10, 2021, and temporary partial disability benefits from February 11, 2021, and continuing. After a hearing on the claim, the deputy commissioner found that Blot and Lowe were credible witnesses and discounted Waldman-Seay's testimony because she could not answer most of the questions asked of her. The deputy commissioner found that Blot had suffered an injury by accident on December 15, 2019, and awarded him lifetime medical benefits.

The deputy commissioner denied Blot's request for temporary total disability benefits between March 20, 2020, and February 10, 2021, finding that he stopped working due to the COVID-19 pandemic, not his compensable injury. The deputy commissioner also denied Blot's request for temporary partial disability benefits beginning February 11, 2021, finding that the reduction in Blot's work hours was not related to his compensable injury but "to scheduling issues and the fact that [Blot] had to be retrained." The deputy commissioner held that Blot began marketing his residual work capacity on February 15, 2021, but concluded that his "inability to work additional hours with" the ABC store was "not related to the work accident."

On review, the Commission affirmed in part and reversed in part. The Commission found that Blot had sustained a compensable injury by accident and that the medical treatment Blot received from Dr. Hospodar was causally related to the accident. The Commission reviewed Blot's marketing log and determined that it "demonstrated a reasonable effort to secure suitable light duty work." Accordingly, it found that Blot's inability to work additional hours was causally related to the work accident and, "in the interests of judicial economy," awarded him temporary partial disability beginning February 11, 2021. This appeal follows.

ANALYSIS

The Commonwealth argues that the Commission erred as a matter of law when it awarded temporary total disability benefits to Blot beginning February 11, 2021, because "no evidence causally related [his] wage loss to the work accident." The Commonwealth emphasizes that Blot continued to work as a sales associate for months after his injury and ceased working in March 2020 only "because of the pandemic." After Dr. Hospodar's note released him to "light duty" on February 11, 2021, without any specific restrictions, he returned to his "same position—sales associate—at his pre-injury hourly rate" even though he was partially disabled. Moreover, considering that Blot admitted his reduced hours were because of "scheduling issues and the need for retraining," not his injury, the Commonwealth asserts that there was no evidence that his lost wages were causally related to his injury. We agree.

The Commission may award temporary partial disability benefits for "incapacity for work *resulting from* [a compensable] injury." Code § 65.2-502 (emphasis added). "[W]here an injured worker is only partially disabled," however, Code § 65.2-502 "presumes . . . that [the] employee can continue working either on restricted duty or in an altogether new job." *McKellar v. Northup Grumman Shipbuilding, Inc.*, 290 Va. 349, 357 (2015). "As a result, economic loss is the appropriate test *for the compensation award* in cases of partial incapacity." *King William Cnty. v. Jones*, 66 Va. App. 531, 541 (2016) (*en banc*) (quoting *McKellar*, 290 Va. at 357). "An economic loss analysis . . . require[s] proof that a claimant suffered an actual economic loss in the labor market" because of his compensable injury "and did not merely lose the theoretical capacity to perform abstract job functions."[1] *Id.*

_____

[1] By contrast, a totally disabled claimant is entitled to benefits under Code § 65.2-500 upon proof that "the injury caused a loss of earning capacity." *Jones*, 66 Va. App. at 541; *McKellar*, 290 Va. at 357 (contrasting the different standards for claims of total disability under Code § 65.2-500 and claims of partial disability under Code § 65.2-502).

Consistent with those principles, we have held that it would be "impermissible" if "a partially disabled worker who is laid off *for reasons other than* [*his*] *work-related disability*" was "entitled, subject only to a marketing requirement, to disability benefits during a period of unemployment." *Id.* at 548 (emphasis added). Such a result would transform the Workers' Compensation Act to "nothing more than another form of unemployment insurance." *Id.* Accordingly, it is now an "established principle" that partial disability benefits can be awarded only after a claimant demonstrates that his "'wage loss is *causally related* to the partial incapacity.'"[2] *Jones*, 66 Va. App. at 544 (emphasis added) (quoting *Carr v. Atkinson*, 63 Va. App. 281, 286 (2014)); *Pocahontas Fuel Co. v. Barbour*, 201 Va. 682, 684 (1960) (holding that "[o]ne who has suffered a partial physical disability may obtain total incapacity payments if, *because of his disability*, he is unable to market his remaining capacity for work" (emphasis added)). "The [C]ommission's determination regarding causation is a finding of fact." *City of Newport News v. Kahikina*, 71 Va. App. 536, 545 (2020) (alteration in original) (quoting *Farmington County Club, Inc. v. Marshall*, 47 Va. App. 15, 26 (2005)). So, too, is the question of whether "an employee has made a reasonable effort to market his residual work capacity." *Hamilton v. Pro-Football, Inc.*, 69 Va. App. 718, 727 (2019).

Here, the record does not support the Commission's conclusion that Blot's wage loss was causally related to his partial incapacity. After Blot sustained his compensable injury in December 2019, he continued to work as a sales associate *with no restrictions* for approximately three months. Moreover, he unequivocally testified that his decision to stop working in March 2020 was *not* because of his injury; rather, his cardiologist instructed him to stop working

---

[2] The analysis in *Jones* relies, in part, on a five-factor test for determining whether a partially incapacitated employee who is *furloughed* may attribute wage loss to his incapacity. 66 Va. App. at 547-48. Blot was not furloughed; nevertheless, *Jones* is instructive in assessing a claim for partial disability benefits by a claimant who was unable to return to his pre-injury employment "for reasons other than [his] work-related disability." *Id.* at 548.

because of concerns about COVID-19. *See Clayton v. Taylor*, 193 Va. 555, 560-61 (1952) ("[A] litigant is bound by his own unequivocal factual statements upon matters within his knowledge and may not ask that his testimony upon such matters be disregarded."). In addition, when he returned to work in February 2021, he had been replaced and the store's system had been updated. Accordingly, although he worked fewer hours each week, Blot himself testified that his reduced hours were attributable to scheduling issues and the need to be retrained, not his knee injury. To be sure, Dr. Hospodar returned Blot to work on "light duty"; but his note did not contain any specific restrictions, and no evidence demonstrated that an alleged squatting restriction limited his wages.

"Loss of employment should not be deemed due to disability if a worker without the disability would lose employment or suffer a reduction in earnings under the same economic conditions." *Utility Trailer Mfg. Co. v. Testerman*, 58 Va. App. 474, 481 (2011) (quoting 4 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law*, § 84.03 (2004)). As demonstrated above, Blot's unequivocal testimony affirmatively establishes that his wage loss was not caused by his partial incapacity but by his decision to stop working during the pandemic and attempt to reclaim his same job nearly a year later after he had been replaced and his employer had updated its system. Thus, he would have suffered the same reduction in his earnings irrespective of his partial disability. Accordingly, Blot failed to demonstrate that his wage loss was causally related to his injury and the Commission erred in awarding Blot temporary total disability benefits beginning February 11, 2021.[3]

---

[3] As we find the Commission erred in awarding benefits, we need not reach the issue of Blot's residual marketing capacity.

## CONCLUSION

For the foregoing reasons, the judgment of the Commission is reversed.

*Reversed.*

Causey, J., dissenting.

The requirement from *King William County v. Jones*, 66 Va. App. 531 (2016) (en banc), that "a partially disabled claimant bears the burden of establishing a causal link between a claimed economic loss and the work-related injury" applies only to cases in which the claimant, along with an "entire class of employees regardless of disability status," is laid off or furloughed. 66 Va. App. at 548, 552. Because the majority now extends this requirement to cases beyond this scope, I respectfully dissent.

In reversing the Commission's award of partial disability payments to claimant, the Court in *Jones* held that the five-factor test from *Utility Trailer Mfg. Co. v. Testerman*, 58 Va. App. 474 (2011), for determining whether a claimant's wage loss was due to the claimant's partial incapacity, applied. In so holding, this Court recognized that "*Utility Trailer* 'addresses only those cases where a partially incapacitated employee is *furloughed*.'" *Jones*, 66 Va. App. at 547-48. This Court applied the *Utility Trailer* test to the facts in *Jones*, reasoning that "the significance of the adverse employment action [in *Utility Trailer*] being a furlough was that *it applied to an entire class of workers*, regardless of disability status, and not to individually selected workers." *Id.* at 548 (emphasis added). The Court reasoned that, although the claimant in *Jones* was terminated, not furloughed, "the termination of the custodial positions also *applied to an entire class of employees* regardless of disability status," and so "the reasoning and rationale of *Utility Trailer*" applied to the claimant in *Jones*. *Id.* (emphasis added). I agree that under circumstances such as those in *Utility Trailer* and *Jones*, where an entire class of workers is subject to an adverse employment action, such as a furlough or layoff, an employee should have to prove that his wage loss is causally related to his work injury.

Where, however, as here, an injured employee is singularly subject to an adverse employment action, the *Utility Trailer* requirement that a partially disabled claimant bears the

burden of establishing a causal link between a claimed economic loss and the work-related injury should not apply. It is not disputed that Mr. Blot's knee injury is work-related. Although he was absent from work due to reasons unrelated to his injury, his pain worsened during his absence (which began in March 2020)—the Commission notes in its opinion that when claimant saw Dr. Hospodar on April 8, 2020, claimant "complain[ed] of burning medial right knee pain" and "reported the [treatment (injections)] worked for a few weeks but the pain was now worse." The opinion also notes that when claimant saw Dr. Hospodar in February 2021, "[h]e reported his right knee pain increased over the preceding weeks," and it was at this point that Dr. Hospodar instructed that claimant be placed on light duty. Mr. Blot returned to his pre-injury sales associate position at the ABC store but only worked six to eight hours per week. The employer testified that this was because Mr. Blot had been replaced during his absence. Mr. Blot acknowledged that he worked fewer hours because of scheduling issues and the need to be retrained. The adverse employment action, however, that Mr. Blot suffered—fewer hours, and thus, lower wages—was one that he suffered alone. The hearing transcript and the parties' exhibits do not show that a class of employees, including able-bodied employees, uniformly suffered from fewer hours and thus, lower wages.

When an employer's adverse employment action affects all employees (injured or not) equally, it is easier to discern that such actions were undertaken for a legitimate business purpose, and the burden should be on the employee to prove that his wage/economic loss was injury related. In contrast, in cases like this one, where an injured employee is singularly subject to an adverse employment action, it is harder to discern whether an employer's adverse employment actions were for a legitimate business purpose or masquerading as business-related but taken for the purpose of discrimination towards an injured employee. Employers could easily take an adverse action towards the one injured employee—laying him off, demoting him,

or cutting his hours—but state that such action had a business purpose unrelated to the injury to avoid paying partial disability benefits. In cases like this one, an injured employee should not have the burden of proving that his economic loss was causally related to his work injury.

*McKellar v. Northrop Grumman Shipbuilding, Inc.*, 290 Va. 349 (2015), relied on by the Court in *Jones*, states that "Code § 65.2-502 pertains to partial incapacity and applies an economic loss test." 290 Va. at 358. It did not, however, state that a worker claiming partial incapacity benefits "bears the burden of establishing a causal link between a claimed economic loss and the work-related injury." Thus, this requirement need not be extended to cases beyond those involving layoffs and furloughs.

Instead, in partial disability benefits cases in which no furlough or layoff was involved, the Commission should determine whether "a disabled employee . . . ma[d]e a 'reasonable effort' to market his remaining work capacity[.]" *Nat'l Linen Serv. v. McGuinn*, 8 Va. App. 267, 269 (1989) (reversing and remanding Commission's award of partial disability benefits). Such a test requires a worker to show *economic loss* in order to receive partial disability benefits, as *McKellar* notes is the test in partial disability cases. In order to be awarded benefits under this test, "[t]he employee must obviously exercise reasonable diligence in seeking employment, and what is reasonable in a given case will depend upon all the facts and circumstances." *Id.* at 270-71 (quoting *Great Atl. & Pac. Tea Co. v. Bateman*, 4 Va. App. 459, 467 (1987)). This Court laid out the factors that should be considered "in deciding whether a partially disabled employee has made reasonable effort to find suitable employment commensurate with his abilities[.]" *Id.* at 272.

> [T]he commission should consider such factors as: (1) the nature and extent of employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the

- 11 -

employee, considering his disability; and (6) any other matter affecting employee's capacity to find suitable employment.

*Id.* "The commission . . . determines which of these or other factors are more or less significant with regard to the particular case." *Id.* at 272-73. Additionally, "[w]here the commission takes notice of employment conditions in a particular area, such should be stated in the findings of fact along with the findings regarding the other factors considered." *Id.* at 273.

Here, in its opinion, the Commission specifically referenced these factors and discussed them in determining whether Mr. Blot reasonably marketed his residual earning capacity. The Commission noted that Mr. Blot's pre-injury duties included "waiting on the customers, collecting money, straightening the stores with stock, cleaning the store, [and] doing odd jobs around the store to repair things." In view of these pre-injury duties, the Commission noted the nature and extent of Mr. Blot's disability, referencing his statement that post-injury, "while at work, it was painful to stoop," and that "Dr. Hospodar released the claimant to ongoing light duty on February 11, 2021." The opinion notes that the claimant was seventy-five years old. The Commission also considered the nature and extent of the claimant's job search, noting that "[t]he record includes his job search log detailing his efforts from February 15, 2021 through April 30, 2021" and that the claimant "submitted an application to each of the fifty-four potential employers." The Commission stated that it "reviewed the claimant's marketing evidence and f[ou]nd it demonstrated a reasonable effort to secure suitable light duty work." Although the Commission did not discuss every factor enumerated by the Court in *McGuinn*, it is the Commission's duty to "determine[] which of these or other factors are more or less significant with regard to the particular case." 8 Va. App. at 272-73. Thus, I presume that the Commission considered the most significant factors in determining that Mr. Blot made a reasonable effort to market his remaining work capacity, and thus was entitled to partial disability benefits. I would

not disturb the Commission's finding on this matter and would affirm the Commission's decision.

However, if the requirement from *Jones* did apply to this case, evidence in the record supports the Commission's finding that "the claimant's inability to work additional hours" is causally related to the work accident. Although not specifically noted by the Commission in its opinion, in Mr. Blot's call with the insurance claim representative, Mr. Blot states that he was partially absent from work because of his injury. Mr. Blot's absence from work is the reason he was replaced and had to be retrained, which led to him working fewer hours. Because this absence was due, in part, to his work-related injury, his wage loss is causally related to the work accident. "On appeal, '[d]ecisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court.'" *Commonwealth v. Cordle*, 37 Va. App. 232, 234 (2001) (alteration in original) (quoting *Manassas Ice & Fuel Co. v. Farrar*, 13 Va. App. 227, 229 (1991)). Thus, because the Commission's finding that Mr. Blot's wage loss was causally related to the work accident is supported by credible evidence, I would not disturb this finding on appeal and would uphold the Commission's grant of partial disability benefits to Mr. Blot.

For the reasons stated above, I respectfully dissent.